**FINLEY et, Plaintiffs-Appellees, v. DUFFY et, Defendants-Appellants.**

Ohio Appeals, Seventh District, Columbiana County.

No. 671. Decided May 19, 1950.

Tobin & Tobin, East Liverpool, for plaintiffs-appellees.
Brookes & Lynch, Woll, Glenn & Thatcher, East Liverpool, for defendants-appellants.

SKEEL, PJ, HURD, J, of 8th District: DOYLE, J, of 9th District sitting by designation in the 7th District.

## OPINION

By SKEEL, PJ.

This cause comes to this Court on appeal on questions of law and fact from a decree and judgment of the Common Pleas Court of Columbiana County, granting an injunction as prayed for by the plaintiffs against the defendants on the 28th day of June, 1948, and in its final form on the 29th day of December, 1948.

The trial before this court being de novo, the fact that the decree was entered before the defendants were afforded the opportunity to submit evidence to substantiate by proof the affirmative allegations of their supplemental answer, filed by leave of court, need not be considered.

The plaintiffs are members of the National Brotherhood of Operative Potters. The defendants are likewise members and are the national officers of such union. The membership of said union is composed of operative potters belonging to separate local unions located throughout the United States and Canada, which unions, about 114 in number, are affiliated with and under the jurisdiction of the National B. O. P. The home office of the N. B. O. P. is at East Liverpool, Ohio.

The issues presented by the pleadings and the evidence are, first, as to the power of the convention of the Brotherhood to amend the constitution and by the force of such amendment increase the salaries of its national officers; second, the power of the executive board to translate an hourly wage increase into a percentage increase for the national officers;

and third, the power of a court to interfere with the internal affairs of the Brotherhood.

The officers, under the terms of a resolution amending the constitution of the Brotherhood passed at the regular convention of the Brotherhood in 1944, amended Sec. 75 of the constitution in part authorizing changes in the compensation to National officers. This convention upon the authority of Sec. 75 as amended and upon advice of the finance committee then fixed the following salaries for national officers:

| | |
|---|---|
| President: | 12,000.00 |
| Secretary: | 8,500.00 |
| 1st Vice Pres.: | 7,500.00 |
| 2nd Vice Pres.: | 7,500.00 |
| Organizers: | 5,000.00 |
| Members of National Comm. | |
| Members of National Comm. Work | $15.00 per day |

Thereafter on the occasion of the national convention of 1946 the constitution as then amended provided by Sec. 77 as follows:

"Sec. 77. Whenever the general ware and china ware trade is granted an increase in wages, the same amount of increase shall also be passed along to the President, Secretary-Treasurer, First Vice-president, Second Vice-president and National Organizer and whenever the trade takes a decrease, said decrease shall apply to the President, Secretary-Treasurer, First Vice-president and Second Vice-president and National Organizer. Any salary increase or reduction for said officials which may be proposed in the future, other than as stated above, shall conform to Sec. 75."

Also Section 33 of the 1946 Constitution provided:

"The Third, Fourth, Fifth, Sixth, Seventh and Eighth vice-presidents shall constitute the board of trustees and together with the president, first and second vice-presidents and secretary-treasurer shall constitute the national executive board. The third vice-president shall be chairman of the board of trustees."

In June, 1946, an 18-½ cent per hour raise was granted the general ware and china ware trade. This was a totally different method of increasing the wages of the members of the union. Theretofore all raises had been on a percentage basis. This necessitated developing a formula under the provisions of Sec. 33 of the constitution, supra, to apply such raises to

the officers' salaries. This was accomplished by computing the 18-½ cents per hour increase on a sixty-hour week basis. The increases of eight and one-half cents per hour granted on Feb. 1, 1947 and six cents per hour as of September 17, 1947, with regard to officers' compensation were treated in like manner. Thereafter the national executive board translated the cents per hour increases into percentage increases for the officers as follows:

The increase of 18-½ cents per hour was changed to 12-½% increase

The increase of 8-½ cents per hour was changed to 7-½% increase

The increase of 6 cents per hour was changed to 5% increase

As thus figured, the increases to the officers were somewhat greater than the cents per hour increases to the trade generally. Prior to the filing of this action the convention of the union in 1946 and 1947 approved the national officers' salaries as then being paid.

At the 1948 convention, after notice to all local unions, the subject of the national officers' compensation was again brought up for consideration. This action was then pending. Upon consideration a resolution was adopted fixing the national officers' compensation as follows:

National President                    $294.09 per week
National Secty-Treas.              $207.57 per week

This was the same rate of compensation as had been paid since the last revision.

The resolution also provided that all deductions in salary suffered by the national officers because of this lawsuit should be restored to them and that "this proposition (the subject of the national officers' compensation) be submitted to a referendum of the trade."

A canvassing committee was appointed who counted the votes and found that a majority of those who were legally entitled to vote and who had voted in a legal manner approved the resolution.

It is the claim of the plaintiffs, as the basis for the injunction, prayed for, that the increases granted as in 1944 and the percentage increases in place of the cents per hour increases of 1946 and 1947 were unauthorized and in violation of the constitution and that the canvassing committee erroneously found that the resolution of the 1948 convention had received a majority vote when in fact more votes were cast against it than in its favor.

In considering the issues presented by the pleadings and the evidence it is well to remember that courts will not as-

sume to act in place of those authorized to interpret the constitution and by-laws of a voluntary association unless those upon whom the duty is placed act in an arbitrary and unreasonable manner. This is also true with respect to the determination of all questions of policy and internal management.

Oaks on "Organized Labor and Industrial Conflicts." Sec. 91 p. 93.

The basic question here involved comes clearly within the sphere of the internal management of the Brotherhood. The compensation of the national officers in no wise effects a property right of any of the members. The continued course of conduct upon this or any other subject of internal policy comes under the complete control of the membership, either by action at the convention of the members or by a referendum. The record discloses that after the amendment to Sec. 75 of the Constitution of 1941 by the 1944 Convention, the subject of the change in compensation of the national officers came up for consideration in each of the conventions of 1946, 1947 and 1948 and in each instance the opposition to the basic increases granted by the convention of 1944 and those subsequently given because of wage increases obtained by the trade generally, failed to obtain the support of the membership. If, in fact, the desire of the Brotherhood is to revoke on the one hand or approve on the other, what has heretofore been done on this subject, the convention of 1950 has full power and authority to make whatever order seems just, no matter what this court does in the instant case. The matter is therefore one which, there being no claim of fraud, the court should leave to the regularly constituted tribunals of the Brotherhood.

Sec. 3 of the Constitution of 1941 provided as follows:

3. "The Convention of the National Brotherhood of Operative Potters shall have power and authority to make or repeal any laws deemed necessary. It may also tax the members for the maintenance of the organization."

Section 26 provides:

26. "All resolutions adopted by the Convention which do not specify the time they shall become effective—excepting resolutions affecting the wage scale—shall take effect on

the first day of the month following the adjournment of the Convention."

Section 255 provides:

255. "These laws shall not be altered or amended except at a stated meeting of the National Union or by referendum vote of the National Brotherhood of Operative Potters."

Section 257 provides:

257. "Should any doubt arise respecting the true intent and meaning of any article or section of this constitution, the question shall be referred to the President and Officers of the National Brotherhood of Operative Potters."

The Convention of 1944 upon the authority of the foregoing sections and within the general powers conferred by §8623-105 GC proceeded to amend Sec. 75 of the Constitution of 1944 which then provided:

"75. Resolutions calling for changes in the salaries of the National Officers may be introduced in Convention or in Local Unions, but such resolutions must be referred to the trade for adoption or rejection, and each officer shall be voted upon individually; resolutions pertaining to National Officers' salary is permitted only on the off year."

The amendment struck out the last part of the provision, that is, the words "but such resolution must be referred to the trade for adoption or rejection and each officer shall be voted upon individually; resolutions pertaining to National officers' salary is permitted only on the off year." (It is suggested in the record that by "off year" was meant odd number years.)

Upon the adoption of such amendment the convention proceeded as above indicated to increase the national officers' compensation. They interpreted their constitution as amended, as conferring upon them the right to do so. This duty was imposed on the officers by section 257, supra. (Constitution of 1941. Same provision is to be found in Sec. 277 of the constitution of 1946.) There were certainly grounds upon which to come to that conclusion and the court cannot substitute its judgment for that of those who by the fundamental law of the Brotherhood are vested with such power. The rule is well stated in the case of Allen v. Brotherhood of Railway Trainmen, 110 Pac. (2d) 933 at 939:

"The contention that the officers of the Brotherhood misconstrued and misinterpreted the provisions of the constitution in respect to the matters involved here cannot be sustained. As was said by the court in Pratt v. Amalgamated Assoc. of S. & E. R. R. Employees, 50 Utah 472, 167 Pac. 830, 834:—

'* * * In any event, the officers not only possessed right, but it was their duty to construe and apply the provisions of the constitution to the best of their understanding and ability. The fact that different officers have arrived at different conclusions regarding certain provisions of the constitution is but natural. What interpretation we might now place upon the constitutional provision in question is of no importance, since we are not authorized to review the rulings of the regularly constituted officers of the association relating to the internal affairs of the association.' "

The Allen case involved a dispute on a question of seniority rights between members of the same union. Under the powers conferred upon the officers of the union by the constitution, the dispute had been considered and determined by the said officers. The court refused to substitute its judgment, or review the conclusions reached by those empowered by the constitution of the union to resolve the controversy.

The same result must follow here first from the determination of the executive board with regard to the percentage increases above set forth and second from the determination of the canvassing committee as to the result of the referendum of 1948.

The right to seek the power of injunctive relief in a court of equity cannot be invoked unless and until it is made to appear that a property right has been invaded for which there is no other adequate remedy afforded. Here the plaintiffs have recourse to the procedure provided by the constitution of the Brotherhood of which they are a part. By their membership in the Brotherhood they have adopted the rules created by the constitution and by-laws as the basis of conducting the internal affairs of the Brotherhood. By such rules they must be bound.

For the foregoing reasons a decree will be entered for the defendants appellants. Exceptions noted. Order see journal.

HURD, J, DOYLE, J, concur.