**ARMSTRONG et, Plaintiffs-Appellees, v. DUFFY et, Defendants-Appellants.**

Ohio Appeals, Seventh District, Columbiana County.

No. 688.   Decided June 11, 1951.

188

Tobin & Tobin, Lisbon, for plaintiffs-appellees.

Brookes, Lynch & McDonald, East Liverpool, for defendants-appellants.

(SKEEL, PJ, HURD, J, THOMPSON, J, of the 8th District sitting by designation in the 7th District.)

## OPINION

By HURD, J:

This action in equity for injunction and equitable relief comes before this court as an appeal on questions of law and fact from a judgment rendered by the common pleas court of Columbiana County against the defendants, James Duffy, Charles Jordan and the National Brotherhood of Opera-

tive Potters, permanently enjoining said defendants from enforcing certain penalties imposed upon the plaintiffs individually as punishment for alleged violation of the union constitution and by-laws. The trial resulting in the imposition of punishment, was conducted by the 55th (July 1949) National Convention of the National Brotherhood of Operative Potters, an Ohio corporation, of which the individual plaintiffs and defendants are members. The penalties against which relief is sought consist of (1) a fine of $50.00 each, and (2) a suspension of the right of each to hold office within the union for a period of ten years.

The nature of this appeal brings the case before us for trial "de novo," it having been stipulated by the parties hereto that the record and evidence made and presented in the trial court shall be received and considered by this court as evidence on this appeal.

Fundamentally, the case involves the question of union discipline of individual members of a union, and the jurisdiction of a court of equity to grant relief from alleged oppressive measures by invocation of the injunctive process.

For brevity and convenience, the individual parties will hereafter be designated as plaintiffs and defendants as they appeared in the trial court. The corporate defendant, National Brotherhood of Operative Potters, will be referred to as N. B. O. P., or simply as the National Brotherhood.

The National Brotherhood is, in fact an International Union, originally organized in 1891 and incorporated under the laws of Ohio in 1894. It is the parent organization which is composed of 114 local unions located in the United States and Canada, all affiliated with the American Federation of Labor, which, at the time of trial had a membership of approximately 28,000 skilled and unskilled craftsmen employed in the pottery, china and sanitary ware industry.

The defendant, James Duffy, is now and has been for many years president, and the defendant, Charles Jordan, is now, and has been since 1945, the secretary-treasurer of the National Brotherhood.

The National Brotherhood is a democratically organized union with a code of regulations and by-laws which they have termed a constitution. As these by-laws and regulations are changed from time to time, the constitution is amended accordingly, provided that the designated procedural steps are properly taken.

In February, 1948, a suit was filed in the common pleas court of Columbiana County, Ohio, entitled Finlay et al v. Duffy et al, No. 35918 (OA 57 Abs 442, OS No. 32413, 154 Oh St 390, MCO and Dis.), by all of the plaintiffs in this action,

with the exception of E. C. Armstrong, against the defendants Duffy and Jordan, both individually and in their respective official capacities, dealing with certain salary increases in which action an injunction was prayed for against said individuals and the National Brotherhood on the ground that the officers had taken salary increases in a manner not authorized by the constitution and by-laws. Without describing the proceedings of that case in great detail, suffice it to say that after extended hearings, the trial court ruled in favor of the plaintiffs and granted the injunction, holding with the plaintiffs that the salary increases which had been taken by the president and secretary-treasurer of the National Brotherhood were unauthorized under the constitution and the proceedings had thereunder, and on June 26, 1948, entered an order enjoining the defendants, Duffy and Jordan, from taking or accepting said salary increases. As a part of the same case, as appears by the record, the common pleas court suggested in its opinion that the injunction would be dissolved if an election was held and salary raises were approved by the general trade of the National Brotherhood in accordance with its constitution. Within a few days thereafter the 54th Convention (1948) of the N. B. O. P. met in Atlantic City, New Jersey, and voted salary increases to the president and secretary-treasurer subject to the approval of the membership to be determined by a referendum vote which was ordered to be taken by the general trade in August, 1948, at which time the defendants filed a motion for a new trial in the original case, stating that a vote was being taken. This was done in pursuance of the statement contained in the opinion of the trial court.

The result of said voting was announced in September, 1948, showing that the salary increases were approved by a majority of 221 votes for Duffy and 241 votes for Jordan. Thereafter, the plaintiffs, Whippler and Finlay, together with two other members of the National Brotherhood who were not in this particular suit, discovered upon investigation that fraud had been committed in the returns reporting the votes of Local 191 of Hamilton, Canada. This discovery was made some time during the month of October, and an investigation disclosed that the president of Hamilton Local 191 had falsified the return of the votes by arbitrarily adding 300 votes in favor of the salary increases for the president and secretary respectively, and by arbitrarily adding to the number of votes not in favor by 50 votes each respectively. This fraud was later verified by President Garvin Wilson of Hamilton Local 191 who, by affidavit, admitted that he himself had

made the fraudulent return. With the correction of the returns of the vote in Local 191, the entire result of the referendum was changed so that the record then showed a majority of the votes were against the salary increases of the officers, Duffy and Jordan.

On November 4, 1948, L. A. Finlay and Norman Whippler, two of the plaintiffs in case No. 35918, made an affidavit based upon the fraudulent return of Local 191, stating in substance that the vote published by the national secretary was incorrect and that the vote of the trade actually was against the national president and secretary receiving the salary increases and stating that the original election returns and envelopes were important in determining the correctness of the vote and that this valuable evidence was in the hands of the defendant, Charles Jordan, and certain members of the canvassing committee. A motion was then filed on behalf of plaintiffs by their counsel, for an order directing the secretary and the members of the canvassing committee to impound the ballots and envelopes. The court granted said motion and enjoined the defendant, Jordan, individually and as national secretary of the National Brotherhood and the members of the canvassing committee of the National Brotherhood from destroying any of the election returns together with the original envelopes and ordered the ballots impounded under order of the court.

Thereafter, on Nov. 22, 1948, the canvassing committee received a registered letter signed by Duffy as president and Jordan as secretary, protesting the votes of certain other local unions, because they had not voted from the rolls. The canvassing committee of the National Brotherhood met on Dec. 2nd, 3rd, 6th, 10th and 11th and heard protests on the vote of eleven other locals and made an order voiding the votes of seven of said locals on the grounds that they had not voted from the rolls, with the result that the number of votes less than the majority in favor of the salary increases which had resulted from the discovery of the fraud in Hamilton Local, was again changed so that finally the votes in favor of the president's increase in salary was 4233 and opposed, 3668, and in favor of the secretary's increase 4188, and opposed 3591.

Thereafter defendants filed a motion to vacate the judgment previously entered and to dissolve the injunction and were given leave to file a supplemental answer. The trial court overruled defendants' motion to vacate the injunction and overruled the motion for new trial. The defendants then upon leave filed a supplemental answer alleging a referendum

vote of the trade favorable to themselves to which plaintiffs filed their reply traversing the allegations of the supplemental answer. Upon trial the court found that the action of the canvassing committee above described was "arbitrary and unreasonable for the reasons that said locals voted as they always had voted in the past and received no different instructions than they ever had and had no chance to correct their votes." Thereupon the trial court restored the votes of said seven locals which had been invalidated by the canvassing committee and found that the votes of the referendum were finally as follows:

| | |
|---|---|
| Opposed to the president's increase | 4678 |
| In favor of the increase | 4321 |
| Opposed to the secretary's increase | 4597 |
| In favor of the increase | 4260 |

The trial court having found that the referendum was opposed to the salary increases of the president and secretary, continued the injunction against them and rendered an opinion setting forth the reasons therefor on April 11, 1949. Thereafter the judgment of the common pleas court was appealed to this court. A decision was rendered dissolving the injunction, primarily for the reason that the question presented involved the internal policy of the organization and that the salary paid to the officers was not, per se, a property right of the members thereof. See **Finlay, et al v. Duffy, et al, 57 Abs 442; 94 N. E. 466.** At **page 446,** Abs, Skeel, J., speaking for this court, said:

"The basic question here involved comes clearly within the sphere of the internal management of the Brotherhood. The compensation of the national officers in no wise effects a property right of any of the members. The continued course of conduct upon this or any other subject of internal policy comes under the complete control of the membership, either by action at the convention of the members or by a referendum. The record discloses that after the amendment to Sec. 75 of the constitution of 1941 by the 1944 convention, the subject of the change in compensation by the national officers came up for consideration in each of the conventions of 1946, 1947 and 1948 and in each instance the opposition to the basic increases granted by the convention of 1944 and those subsequently given because of wage increases obtained by the trade generally, failed to obtain the support of the membership. If, in fact, the desire of the Brotherhood is to revoke on the one hand or approve on the other, what has heretofore been done on this subject, the convention of 1950 has full power and authority to make whatever order seems just, no matter what this court does in the instant case."

The Supreme Court overruled a motion to certify the record and dismissed the appeal as of right. **Finlay, et al v. Duffy, et al, 154 Oh St 390.**

Referring now to the 54th National Convention (1948) the record shows that on July 27, 1948, the delegates adopted the following resolution:

"RESOLVED, that any member or members of the N. B. of O. P. attempting to, or actually resorting to court action in an attempt to redress an actual or so-called grievance against any member of the N. B. of O. P. or an act of the convention or any authorized agent or agents thereto, without first exhausting every possible effort to redress the grievance under the laws and constitution of the N. B. of O. P. shall be considered as in violation of the laws of the organization and dealt with under appropriate laws of the N. B. of O. P."

It will be noted that this resolution was adopted approximately five months after the litigation which we have described at some length had been commenced in common pleas court. Thereafter, on June 20, 1949, all of the plaintiffs herein, except E. C. Armstrong, received registered letters stating substantially as follows:

"June 20, 1949.

Dear Sir and Brother:

You are hereby summoned to appear in the National Convention June 27, 9:30 A. M. Atlantic City Auditorium, Atlantic City, N. J., for making issue in court the salary referendum of president and secretary-treasurer of September 1948, before having exhausted appeal provisions as provided in our Constitution. You are to assume all expenses in connection with your getting to Atlantic City. If proven guilty you will not be reimbursed for any expense whatsoever. If adjudged not guilty, the N. B. of O. P. will pay expenses."

Similar letters had previously been written to the same general effect that the plaintiffs would be brought to trial before the National Convention for "taking to court matters which should be disposed of within our organization." It should be borne in mind that the plaintiff, E. C. Armstrong, was not a party to the original action and did not receive any of these notices. However, Armstrong was notified on the second day of the convention where he was present as a delegate from local 124, that he was charged with violation of the constitution and was to be tried with the other plaintiffs.

Plaintiffs, Johnson, Jones and McDaniels were not delegates to the convention and did not appear there. The plaintiffs, Whippler and Finlay, were present, and in substance stated

to the convention that they believed the convention had no right to try them and stated that the defendants, Duffy and Jordan, by filing a supplemental petition asking the court to dissolve the injunction in the original action, had forced the issue in the court proceedings which required them to file a reply in order to make up the issues for trial on the merits.

The convention proceeded to try the plaintiffs and on July 2, 1949 found all of the plaintiffs, whether present or not, guilty and on July 5, 1949, imposed the punishment above described, the serious part of which was to suspend their right to hold office for a period of ten years.

Thereafter, the plaintiffs filed their petition in the instant case to restrain the defendants from enforcing the penalties against them. The trial court in an exhaustive opinion containing a detailed statement of the history of the litigation and the facts in the case, found that plaintiffs herein were amply justified in the procedural steps taken by them; that the plaintiff, E. C. Armstrong, was not a party to case No. 35918; that the case being in court, no one had a right to interfere with the judicial process until the matter in issue was finally determined by the court, and further that the proceedings for trial in the convention were not in accordance with due process and entered a judgment enjoining the defendants from enforcing or attempting to enforce any of the penalties imposed upon the plaintiffs by the convention of 1949.

The foregoing is a sketchy outline of the factual situation. For a more detailed history and factual statement, attention is directed to the opinion of the trial court to be found in the record, pages 930 to 982 inclusive.

Before proceeding to a discussion of the general propositions of law involved, we wish to note that it is admitted that one plaintiff in this case, E. C. Armstrong was not a party to the action complained of by the defendants. Further he was not apprised of any charges pending against him until the second day after he arrived at the convention as a delegate from local 124. Charges against him were identical with those lodged against the other plaintiffs and the penalties against him were the same.

The opinion of the trial court contains an excerpt from the testimony indicating that Duffy stated to Armstrong that his crime was being seen in the company of two of the other defendants and at page 292 of the record the following appears in the cross-examination of Armstrong by defendants' counsel:

(To Armstrong)

"Q. You had been involved before that?

"A. In what?

"Q. All of these affairs in bringing this action in the first place?

"A. Why, no, I was never involved in it.

"Q. Didn't you testify a few minutes ago that you were in several meetings with them (the other plaintiffs) on this subject?

"The Court: Am I to understand, Mr. Brooks, that that is a crime? I would like to know that. Is it supposed to be against the laws of the Brotherhood for some members to get together and talk over something they feel is wrong, of the officials of the Brotherhood? I would like to know that.

"Mr. Brooks: I believe if the purpose of the meeting is destructive of the organization that it is definitely against the laws of the Brotherhood."

Because the plaintiff, E. C. Armstrong, admittedly was not a plaintiff in the original suit and therefore did not resort to court action, we think it unnecessary to discuss his case further, except to state that the trial court was eminently correct in enjoining the defendants from imposing punishment by way of fine and the penalty of suspension from holding office in the union for a period of ten years. This court so holds and as to him a journal entry may be entered accordingly.

Coming now to a discussion of questions of law in respect to the other defendants, it appears to us that two questions are involved.

1. In view of the fact that the amendment to the constitution and by-laws prohibiting members from resorting to court actions against other members and officers for the redress of grievances was adopted some five months after the suit had been commenced, could the National Brotherhood on the basis of such ex post facto legislation visit punishment and impose penalties for an alleged violation of such an amendment?

2. Such a suit having been commenced prior to the adoption of the restrictive by-law, is the union empowered thereby to visit punishment and impose penalties because of the further proceedings taken and carried on in the prosecution of said suit, after the adoption of the amendment?

We shall consider these questions in the order presented.

Proceeding to the first question, the weight of authority is in favor of the proposition that the union constitution and by-laws constitute a contract between the members thereof and the union. It follows, therefore, that a member of a

union cannot be guilty of the violation of a provision of a contract which was not in existence at the time the alleged offense was committed. The weight of authority also is to the effect that a member of a union has a property right in the trade in which he is engaged and in his membership in a union with its ensuing benefits.

In the instant case, the right of the plaintiffs to be candidates for office and the right to hold office are very valuable property rights which a court in the exercise of its equitable jurisdiction is bound to protect unless the rights are forfeited by conduct prohibited by the organic law of the union. Further, according to the constitution, if they failed to pay the fines they would be deprived of other substantial benefits as well, all involving property rights.

We think it a sound proposition of law that an organization, whether a labor organization or a mutual benefit association, or any voluntary association which is governed by a constitution and by-laws, cannot visit punishment upon a member for any acts or conduct which were not violative of the constitution and by-laws at the time that such acts were committed. We think this proposition has particular application where members invoke the judicial process by appeal to a court of equity for redress of grievances.

We do not mean to state that members of a labor organization may not be bound by proper constitutional provisions requiring them first to exhaust their remedies within the organization before resorting to court action for redress of grievances. Indeed this is a fundamental proposition of law which is recognized in respect of all voluntary associations, but, in the absence of such provisions, all citizens are free to invoke the judicial process without the risk of suspension or expulsion. Courts are created by organic law and are empowered to administer justice according to law, free from interference by any person or group of persons whether well-intentioned or otherwise. To hold otherwise would be a denial of due process. We conclude, therefore, that the first question presented above must be answered in the negative and that the plaintiffs were fully within their rights in commencing the suit against the defendants in February, 1948.

Proceeding now to a consideration of the second question posed above, it is argued by defendants that the plaintiffs were tried in the 1949 convention, primarily because after having discovered the fraud perpetrated by the president of the Hamilton local 191, they did not exhaust their remedies within the organization but instead filed an affidavit with the court delineating their claim of fraud together with a

motion to enjoin Jordan, individually and as secretary of the National Brotherhood and the members of the canvassing committee from destroying the election returns and original envelopes. In other words it is claimed that the gravamen of their offense consisted of calling that fact to the attention of the court. It should be noted that this motion was allowed by the court and in pursuance of the court order the ballots were impounded under the direction of the court. Admittedly this occurred after the adoption of the resolution, amending the constitution and by-laws prohibiting any members of the National Brotherhood from resorting to court action to redress an actual or "so-called" grievance without first exhausting every possible effort to redress the grievance under the by-laws and constitution of the organization.

It should be noted, however, that when the proceedings complained of were had, the case was still pending in common pleas court. Likewise the parties and subject matter were still under the jurisdiction of the court. It is to be noted also that the defendants, themselves, invoked the jurisdiction of the court in the same proceedings after the adoption of the restrictive amendment. The record shows that on December 16, 1948, defendants were granted leave, at their request, to file a motion to vacate the judgment and to dissolve the injunction and to file a supplemental answer. Their supplemental answer was filed Dec. 17, 1948. The court having overruled defendants' motion to vacate the judgment and dissolve the injunction and having overruled the motion for new trial, plaintiffs filed their reply to defendants' supplemental answer and the case came on for trial during the latter part of March, 1949, and the first part of April thereafter.

It appears to us that the suit having been properly instituted in the first instance, at a time when there was no provision in the constitution restricting such action, the parties were entirely within their rights in prosecuting the suit to a conclusion. This is particularly true when defendants continued to recognize the jurisdiction of the court for their own benefit while attempting to deny the jurisdiction of the court to the plaintiffs. The action of the defendants in moving to vacate the injunction on the ground that the vote of the trade was favorable to the defendants' contentions, was a submission by them to the jurisdiction of the court. It is axiomatic that fraud vitiates everything it touches, and when the plaintiffs discovered the fraud in the returns from the Hamilton local they had the legal right to direct the court's attention to the fraud by proper pleadings. This was

properly done by motion and affidavit. Then when the defendants being dissatisfied with the result, proceeded through the agency of the canvassing committee to recanvass the votes of certain local unions and made a new report invalidating the report of these locals, it was merely in pursuance of a right of due process for the plaintiffs to file a reply traversing the allegations of the supplemental answer of defendants which again raised the issue as to the validity of the votes of the trade. The trial court determined the issue favorably to the plaintiffs and we must assume that the court acting as a court of equity granted to all parties to the litigation the right of due process to which they were entitled by constitutional guarantees. The record so shows.

We think that the position of the defendants is untenable when they argue that although the suit was commenced before the restrictve by-law was enacted, the plaintiffs lost all right by reason of said enactment to have issues made on pleadings ultimately determined by the court. To hold otherwise, would we believe place the stamp of approval upon a course of action which would constitute an unwarranted interference with the due and proper administration of justice.

In view of this factual situation here presented we conclude that the defendants were without authority to try the plaintiffs and to punish them merely because they, through counsel, continued to pursue their rights and to prosecute the action to a conclusion which had been commenced prior to the time of the adoption of the restrictive provision of the constitution.

There is abundant authority for the conclusions herein reached. An interesting case in point is found in the case of LoBianco v. Cushing 117 N. J. Eq. 593, wherein it is specifically held in a well-reasoned opinion that a constitution and by-laws of an association cannot be made retroactive in effect upon established rights. This case was decided Feb. 23, 1935, the syllabus of which reads as follows:

"1. A man's trade is property and his membership in a union, with its ensuing benefits, is a property right, which courts of law and equity are obliged to shield and protect.

"2. Sick or death benefits which are incidental to union membership are rights of property which equity will protect.

"3. A constitution and by-laws of an association cannot be made retroactive in its effects upon established rights.

"4. A member of a union is not required, in every instance, to exhaust the remedies within the union which are provided by the constitution and by-laws, before seeking relief in the courts. Where the question is purely social, he must exhaust all remedies set up within the association before he appeals to

the court for reinstatement. If property rights are involved, in the absence of an express agreement to exhaust the remedies provided within the association, he may appeal to the court without having exhausted his remedies. If he has agreed to exhaust the remedies within the association, where property rights are involved, he is not so required if pursuing the remedies within the association would be futile, illusory or vain.

"5. A constitution and by-laws affording internal remedies within a union must be strictly construed and a member is not obliged to pursue a remedy of grace."

For authorities supporting the same general principles see: Polin v. Kaplan, 257 N. Y. 277, decided by the Court of Appeals of New York, (Sept. 29, 1931) reversing the Appellate Division of the Supreme Court, opinion by Kellogg, J., concurred in by Cardozo C. J., Crane, Lehman and Hubbs JJ; Collins et al v. International Alliance of Theatrical Stage Employees etc. of U. S. and Canada, and Dominic Magilo et al v. Moving Picture Machine Operators, 119 N. J. Eq. 230, decided Dec. 24, 1935; Howard A. Leo, Appt. v. Local Union 612 International Union of Operating Engineers, decided by Washington Supreme Court (in banc) Nov. 25, 1946, 174 Pac (2d) 523, 168 A. L. R. 1440 and an extended discussion of this and related cases by annotation at page 1462 et seq.; Duzing v. Nuzzo (1941) 29 N. Y. (2d) 882 modified on other grounds 263 App. Div. 59, 31 N. Y. S. (2d) 849; 175 A. L. R. Ann. pages 1516 et seq. Also interesting articles: Vol. 64 No. 7, page 1049 et seq., Harvard Law Review, "Legal Limitations on Union Discipline" by Clyde W. Summers, Assoc. Professor of Law, University of Buffalo School of Law; Wisconsin Law Review (1948) pages 18 et seq, "Legal Protection of Civil Liberties within Union" by Jos. Kovner.

Under our system of jurisprudence, the courts are open to all citizens, and no person shall be deprived of life, liberty or property without due process of law and any provision of any organization restricting its members from pursuing their rights must be strictly construed.

The Fourteenth Amendment to the Constitution of the United States, Sec. 1, provides:

"All persons born or naturalized in the United States and subject to the jurisdiction thereof, are citizens of the United States and of the state wherein they reside. No state shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States; nor shall any state **deprive any person of life, liberty or property without due process of law; nor deny to any person within its jurisdiction the equal protection of the laws.**"

**Article I, Sec. 16 of the Ohio Constitution** states:

"Sec. 16. All courts shall be open, and every person, for an injury done him in his land, goods, person or reputation, shall have remedy by due course of law and shall have justice administered without denial or delay."

**Sec. 12866 GC** reads as follows:

"Whoever corruptly, or by threats or force, attempts to influence, intimidate or impede a juror, witness or officer in any court in the discharge of his duty, or by threats or force obstructs or impedes or attempts to obstruct or impede the due administration of justice therein * * *" shall be punished as the statute provides.

In the absence of self-binding limitations by contract, the foregoing provisions of the federal and state constitutions and the above quoted section of the general code, insure the right of every citizen of this state to seek remedy by court action for any injuries done to him in his person or property and entitles him to have justice administered according to law without denial or delay, and any person who attempts to interfere unlawfully with this right is guilty of a violation of the fundamental principles guaranteed by constitutional and statutory provisions.

We hold therefore that the plaintiffs, having had the right, unrestricted by any constitutional provision of the organization, to resort to the courts in the first instance, had the further right to prosecute their suit to a conclusion, uninhibited by the ex post facto legislation adopted after the commencement of the suit, but during the pendency of the action. As a corrolary to this determination, we hold that the defendants were without authority to try the plaintiffs for resorting to court action and to impose the penalties of which complaint is herein made and that the attempted discipline of the plaintiffs was unduly oppressive and without warrant or justification in law and that a court of equity has full jurisdiction to grant relief.

For these reasons a decree will be entered as in common pleas court in favor of the plaintiffs permanently enjoining the defendants from enforcing the payment of the fines imposed upon the plaintiffs individually and from enforcing a suspension of the right of each to hold office within the union, and from visiting any punishment upon the plaintiffs for commencing and prosecuting to a conclusion the suit in the case entitled, Finlay et al v. Duffy et al, No. 35918 in the Common Pleas Court.

A journal entry may be prepared accordingly, setting forth

this decree so that the same may be entered of record prior to the National Convention to be held in June, 1951.

SKEEL, PJ, THOMPSON, J, concur.