[Cite as *In re A.I.*, 2014-Ohio-2259.]

# Court of Appeals of Ohio

### EIGHTH APPELLATE DISTRICT
### COUNTY OF CUYAHOGA

---

### JOURNAL ENTRY AND OPINION
### No. 99808

---

## IN RE: A.I., ET AL.
## Minor Children

[Appeal by A.H.I., Father]

---

## JUDGMENT:
## AFFIRMED

---

Civil Appeal from the
Cuyahoga County Court of Common Pleas
Juvenile Division
Case Nos. AD 04902623 and AD 07900116

**BEFORE:** Rocco, J., S. Gallagher, P.J., and McCormack, J.

**RELEASED AND JOURNALIZED:** May 29, 2014

**FOR APPELLANT**

A.H.I., pro se
c/o 8209 Force Avenue
Cleveland, Ohio 44105

**ATTORNEYS FOR APPELLEE**

Timothy J. McGinty
Cuyahoga County Prosecutor

BY:   Joseph C. Young
Assistant Prosecuting Attorney
P.O. Box 93894
Cleveland, Ohio 44101

D.B., pro se
15900 Arcade Avenue, Up
Cleveland, Ohio 44110

KENNETH A. ROCCO, J.:

{¶1} Appellant A.H.I., natural father of the two minor children A.I. and H.I., appeals pro se from the judgments of the Cuyahoga County Juvenile Court in the underlying cases. The juvenile court granted motions filed in the underlying cases by appellee Cuyahoga County Job and Family Services ("CJFS") for orders of support against appellant for each child.

{¶2} Appellant presents four assignments of error. He first argues that the juvenile court improperly denied his "Civ.R. 60(B)" motion. In this motion, appellant sought "relief" from the court's previous orders that granted legal custody of his children to their mother, and an order of dismissal of the underlying custody cases for lack of jurisdiction. He argues secondly, although the juvenile court dismissed the motion, that the juvenile court erred by even considering the mother's motion to show cause why he failed to comply with the visitation schedule the court previously ordered. Thirdly, he argues that the juvenile court violated his constitutional rights by holding that he was in contempt of court during the trial on CJFS's motions for child support. Finally, he asserts that the juvenile court's order of child support is unlawful.

{¶3} Following a review of the record, this court cannot find merit to any of appellant's arguments. Consequently, his assignments of error are overruled. The juvenile court's judgments are affirmed.

{¶4} This court previously addressed the matter of legal custody of appellant's children in *In re: H.A.I.*, 8th Dist. Cuyahoga No. 97771, 2012-Ohio-3816. The underlying facts are set forth in relevant part as follows:

> A.I. was born on September 14, 2004, in New York while the mother was visiting relatives. A.I. and her mother both tested positive for cocaine. Thereafter, officials in Monroe County, New York took emergency custody of A.I. * * * On December 21, 2004, A.I. was placed in the emergency care and custody of appellant. On August 11, 2005, the court awarded legal custody of A.I. to appellant.
>
> The mother entered drug treatment in January 2005. She later relapsed in 2006 while pregnant with H.I. H.I. was born prematurely on August 3, 2006. At the time of H.I.'s birth, the mother tested positive for cocaine, methadone, and opiates, and H.I. was removed from her mother's care. At that time, appellant was alleged to be her father, but he had not established paternity. The Cuyahoga County Department of Children and Family Services ("CCDCFS") was awarded temporary custody of H.I. on May 16, 2007, and she was placed in foster care.

On November 14, 2007, CCDCFS filed a motion to modify, seeking an award of permanent custody of H.I., alleging that the mother had chronic drug dependency issues, appellant had not visited with H.I. since her placement * * * , and appellant had not established paternity. At the time of CCDCFS's November 20, 2008 review of the matter, the agency noted that the mother had served six months in jail for passing bad checks * * * . The report additionally noted, however, that the mother had been sober for approximately six weeks, had started drug treatment, attended weekly Alcoholics Anonymous meetings, was making progress in counseling, and was working. * * * [A]ppellant had established paternity of the child and

passed a drug screening, but had not been consistent with taking the child to speech therapy.

On April 28, 2009, CCDCFS filed a motion to terminate the award of temporary custody of H.I. and to award legal custody to the mother, with protective supervision by CCDCFS for a period of six months. CCDCFS asserted that the mother has substantially complied with the case plan * * * In a review dated May 18, 2009, CCDCFS noted that the mother had made "significant progress"
* * * and * * * had been negative for drug use. On June 4, 2009, the guardian ad litem * * * ("GAL"), * * * recommended reunification of H.I. with her mother, "with protective supervision to the agency."

* * * The magistrate's decision granting CCDCFS's motion was filed on June 18, 2009, and affirmed and adopted by the trial court on July 9, 2009.

* * *

The record indicates that the mother was incarcerated for a short time * * * , and on February 22, 2010, appellant filed a motion to modify custody of H.I. On March 4, 2010, the magistrate awarded appellant temporary custody of H.I.

On August 29, 2010, the mother moved to modify custody of A.I., arguing that appellant had denied her visitation with the child, and [had] neglected A.I.'s health, educational, and emotional needs.

* * *

Following a hearing on June 1, 2011, the magistrate ordered appellant to "cooperate with [CCDCFS's] investigation to allow [CCDCFS] to interview child and visit his home." The parties also agreed to an interim visitation schedule whereby each parent had weekly alternating visitation with the two girls.

* * *

Both parents' motions for legal custody of H.I. and A.I. proceeded to trial before a magistrate on November 2, 2011. * * *

* * *

On November 8, 2011, the magistrate issued a decision finding that it is in the best interest of H.I. and A.I. that the mother be designated residential parent and legal custodian, and that appellant have visitation every other weekend. In relevant part, the magistrate found:

> Results of *In-Camera Interview with the child*, information received from the child's teacher and school officials, specifically mother's allegations that the child is unclean were *substantiated by school officials.* Further concerns were raised as to the child being properly fed and having sufficient lunch. The school official also advised Social Worker that they do not have updated medical and dental information for the child. *School officials had never met the father prior to October 21, 2011.* Further, on the morning of the In-Camera Interview, the Court learned the child had not been given breakfast and that her lunch that she takes to school consists of a sandwich only, there is no drink, fruit or vegetable included in the lunch. The *Court also gave consideration to each parents' (sic) living arrangement* and the number of people in each household interacting with the child on a daily basis. *Father was not forthcoming* when asked about his marriages and how many children he has. * * * Social Worker learned *from the child that she had been hit with a bamboo stick*. When interviewed separately, *sibling confirmed that account. Father acknowledged [administering such punishment* and] believes such discipline is acceptable. * * * Father has not been cooperative with the [social] worker in completing her ongoing investigation. CCDCFS Worker was not able to gain access to the father's home to speak with the child. CCDCFS Worker has investigated the mother's home and found it to be appropriate as the mother is able to meet the child's basic needs. Mother has been clean and sober for more than eighteen (18) months. Social Worker does not believe the mother is a threat to the health and safety of the child. The foregoing demonstrates to the Court that the child's basic needs are better met in the custody of the mother.

On November 28, 2011, the trial court approved and adopted the magistrate's decision.

*In re: H.A.I.*, ¶ 2-32.   (Footnotes omitted; emphasis added).

**{¶5}** Appellant appealed from the order, and this court overruled each of his assignments of error.   This court found that the juvenile court's decision to award legal custody of the children to their mother was based upon "substantial competent credible evidence," and, therefore, the juvenile court did not abuse its discretion.   *Id.* at ¶ 45.   This court also found that the juvenile court did not abuse its discretion in considering the GAL's report.   *Id.* at ¶ 50.   Finally, this court found that the juvenile court did not abuse its discretion in permitting the social worker to testify about the agency's case files on the children.   *Id.* at ¶ 54.   On August 23, 2012, this court affirmed the juvenile court's decision to award legal custody of the children to their mother.   *Id.* at ¶ 57.

**{¶6}** The cases were thereafter returned to the juvenile court pursuant to R.C. 2151.23(A)(2) and (F)(1).   On July 24, 2012, while the appeal in *In re: H.A.I.* was pending, the mother filed motions to show cause in the juvenile court in her children's cases.   She complained that appellant was not visiting with the children at the scheduled times.   The juvenile court set the matter for a hearing on August 29, 2012.

**{¶7}** On July 26, 2012, the CJFS, formerly called the Cuyahoga County Child Support Enforcement Agency, filed motions in the juvenile court to intervene in the cases.

CJFS requested the court to issue orders establishing support for the children pursuant to R.C. 2151.231.[1]

{¶8} On August 28, 2012, appellant responded to the children's mother's motions with motions "to dismiss." He asserted that the juvenile court lacked jurisdiction to consider the mother's motions to show cause. Appellant also argued that the juvenile court should reverse its orders that removed his children from his custody because the orders were based upon "lies."

{¶9} According to the record, the matters proceeded to a hearing on August 29, 2012, as scheduled. That same day, the magistrate issued a decision that denied the mother's motions by ruling that appellant was not in violation of the visitation agreement, but that ordered appellant to provide notice to the mother if he were unable to arrive for the exchange. As to appellant's motions, the magistrate decided they should be "dismissed." On September 13, 2012, the court adopted the magistrate's decision with respect to the mother's motions.

{¶10} On September 14, 2012, appellant filed motions for "reversal" of the "trial hearing of November 2011." He asserted the change of custody rulings were based upon "perjury, abuse of procedure and prejudice."

---

[1]That statute provides in pertinent part that:
"The * * * child support enforcement agency of the county in which the child, parent, guardian, or custodian of the child resides may bring an action in a juvenile court * * * under this section requesting the court to issue an order requiring a parent of the child to pay an amount for the support of the child without regard to the marital status of the child's parents."

**{¶11}** On September 18, 2012, the mother filed objections to the magistrate's decision. On October 3, 2012, the juvenile court overruled the mother's objections as untimely. By separate entry, the trial court denied appellant's motions to dismiss that he filed on August 28, 2012.

**{¶12}** On October 11, 2012, appellant filed motions to "dismiss" CJFS's motions to intervene in his children's cases for "lack of jurisdiction." When CJFS's motions proceeded to a pretrial hearing before a magistrate on October 17, the magistrate decided that same day that, based upon appellant's demeanor, the matter should proceed to trial before a visiting judge. The following day, on October 18, 2012, the juvenile court issued a journal entry denying appellant's September 14, 2012 motions.

**{¶13}** Appellant filed objections to the magistrate's decision. On November 2, 2012, the juvenile court overruled appellant's objections and adopted the magistrate's decision. On November 5, 2012, the juvenile court also denied the motions to dismiss for lack of jurisdiction that appellant had filed on October 11, 2012.

**{¶14}** The cases thereafter were scheduled for a hearing before a visiting judge to take place on December 18, 2012. On the day of the hearing, appellant filed motions to modify his children's custody. He argued that the change of custody orders had been based upon "perjury."

{¶15} On December 20, 2012, the visiting judge issued judgment entries granting CJFS's motions to intervene. The matter of child support was scheduled for trial on March 5, 2013.

{¶16} On January 28, 2013, appellant filed motions to "vacate judgment" in his children's cases. He asserted that the change of custody orders should be reversed because of "error committed in [the] proceedings," viz., "perjury."

{¶17} On January 30, 2013, the juvenile court dismissed without prejudice appellant's motions to modify custody, noting that appellant had failed to sustain his statutory burden to prove a change in circumstances. Two days later, the juvenile court further denied appellant's January 28, 2013 motions to vacate judgments.

{¶18} On February 25, 2013, appellant filed motions for permanent custody of his children. In his affidavit, he averred that the mother was alienating the children against him and was not supervising them properly.

{¶19} Trial was rescheduled for March 14, 2013. The day before trial, appellant filed Civ.R. "60(d)(3), 60(b)(5)" motions to dismiss the cases "due to lack of jurisdiction."

{¶20} In his affidavit in support of his motions, appellant asserted that the persons who testified at the change of custody hearing had "committed fraud upon the court" and "falsely represent[ed]" facts, and that the court lacked jursidiction over him because he was "not a citizen nor a resident of the state of Ohio." Appellant nevertheless invoked

the "rights afforded to him by [the] American constitution and Ohio" to demand dismissal of the cases and the return of his children.

{¶21} Appellant attached a notice of "special appearance" in which he claimed that the original complaints in the cases were defective because the CCDCFS lacked standing to bring them. He also claimed that the juvenile court was "not an Article III court" under the federal constitution because he had been deprived his right to a jury, "[t]hus, this [juvenile] Court lacks lawful jurisdiction to proceed with this matter and the charges must be dismissed, with prejudice."

{¶22} Trial on the matter of child support commenced on March 15, 2013. The visiting judge first permitted appellant to present argument with respect to his motions for dismissal. Although the judge responded by pointing out that appellant's arguments were inapplicable at that juncture and overruled his motions, appellant continued to protest that the matter could not proceed, because "[t]he Court ha[d] no jurisdiction." The judge informed appellant that trial was going forward, so he asked appellant "to behave [him]self in the courtroom, so [he did]n't find [him]self in difficulty by way of contempt."

{¶23} The mother proceeded to testify about her income and expenses, and about her children's needs. She stated that appellant had not provided any support for the children while they were in her custody.

{¶24} At the conclusion of the mother's direct examination, the trial judge asked appellant if he had any questions for the witness. Appellant only insisted that the court

lacked jurisdiction and demanded of the court if it was "denying" him his "right of due process." Appellant ignored the judge's invitation to examine the witness.

{¶25} CJFS's attorney then called appellant to testify on cross- examination, but appellant refused. The judge told appellant that he would "either take the stand or [be] held in custody" until he did so. Appellant again refused.

{¶26} The judge ordered the deputy to take appellant into custody. Appellant continued to be contumacious. He demanded to know if he was being held in "civil or criminal" contempt. He asserted that he could not be forced to testify when the court had no jurisdiction, and proclaimed that his constitutional rights were being violated. He told the deputy that, because he was being placed into custody "under duress," he would have to be taken by force. Only when the deputy warned appellant that he would be subject to a taser did appellant cooperate; he was removed from the courtroom for a time.

{¶27} Thereafter, appellant took the stand, but failed to provide any specific information concerning his income or expenses. He acknowledged that he had graduated from high school and occasionally worked in construction, but stated that he had not been working recently because "this case" took all of his time.

{¶28} Subsequently, the visiting judge issued judgment entries in these cases in which the mother's motions to show cause were noted, once again, as being dismissed, and the CJFS's motions for an order of child support were sustained. The judge completed the worksheets based upon the mother's testimony and upon appellant's admission that he performed some construction work, imputing to him a minimum wage

of $7.85 per hour.   Appellant was ordered to pay child support in the amount of $428.13 per month for each child.

**{¶29}** Appellant appeals from those orders.   He presents four assignments of error that are set forth *verbatim* as follows.

I.   The trial court erred by failing to allow the appellant the due process safeguard provision, provided in CIV.R. 60 B 5, which is a catch all, when accompanied with operative facts for direct or collateral attack on a judgment, to vacate/dismiss pending an evidentiary hearing when there were liberty interests involved nor allowed appellant the right to be heard or present proof.

II.   The trial court's decision to present a show of cause against the appellant during the pre-trial in December 18, of 2012 as well as the trial of March 15, 2013 filed by appellee on July 24, 2012 was false, misleading, and arbitrary to the doctrine of res judicata.

III.   The trial court erred and violated appellant's right of due process after holding him in direct contempt and compelling him to testify against himself under duress of being tasered, after he informed the court he was not a part of the hearing due to it lacking jurisdiction to render a judgment based on a void judgment.

IV.   The trial court acted in an ultra vires capacity by arbitrarily entering an amount for support without anything to substantiate it in the record.   Further, the manner in which the court reached its judgment was unconstitutional, violative of due process.

**{¶30}** In his first assignment of error, appellant argues that the visiting judge acted improperly in denying without a full hearing appellant's motions for relief from the November 28, 2011 custody determinations.   Appellant asserts he presented operative facts to prove that the custody determinations resulted from "fraud" and "perjury" that justified either vacating the

November 28, 2011 orders outright and a halt to the trial on CJFS's motions,[2] or at least a full hearing on his motion prior to considering CJFS's motions. Appellant's argument is rejected for the following reasons.

{¶31} The record reflects appellant filed his first motions for relief from judgment in the underlying cases on August 28, 2012. Although he styled his motions as motions to dismiss, he argued that the November 28, 2011 change of custody orders were the products of "lies" perpetrated on the court by the witnesses. The magistrate recommended that appellant's motions be "dismissed." Appellant never filed any objections to the magistrate's decision. The juvenile court issued a judgment entry denying appellant's motions on October 3, 2012. This constituted a final order on the matter. *Cleveland State Univ. v. Woods*, 8th Dist. Cuyahoga No. 94561, 2010-Ohio-5144, ¶ 29.

{¶32} App.R. 4(A) requires that a notice of appeal be filed within 30 days of the date of the final judgment. This requirement is jurisdictional and may not be extended by the appellate court. *D'Agnese v. Holleran*, 8th Dist. Cuyahoga No. 83367,

---

[2]In making his argument, appellant seems to confuse the issues of fraud upon the court and the court's subject matter jurisdiction to proceed. The cases he cites as authority for his position, such as *Bell v. Nichols*, 10th Dist. Franklin No. 10AP-1036, 2013-Ohio-2559, and *Armstrong v. Duffy*, 90 Ohio App. 233, 103 N.E.2d 760 (7th Dist.1951), do not support his argument. A court's subject matter jurisdiction comprehends its power to grant relief in justiciable matters. The subject matter jurisdiction of the courts of common pleas and their divisions is established by statute. Ohio Constitution, Article IV, Section 4(B). R.C. 2151.23 grants jurisdiction to the juvenile court to determine issues of child custody and support. *State ex rel. Browning v. Browning*, 5th Dist. Muskingum Nos. CT2011-CA-55 and CT2011-CA-60, 2012-Ohio-2158.

2004-Ohio-1795, ¶ 19. "Because [the instant] appeal from the [denial] was filed a year and a half later, this court lacks jurisdiction to entertain his appeal regarding the arguments contained in the motion to vacate." *Id.*

**{¶33}** Appellant's habit of filing successive motions to vacate the November 28, 2011 orders cannot cure the jurisdictional problem, because "[p]rinciples of res judicata prevent relief on successive, similar motions [to vacate] raising issues which were * * * raised originally." *Coulson v. Coulson*, 5 Ohio St.3d 12, 13, 448 N.E.2d 809 (1983). *See also D'Agnese*; *Woods* at ¶ 31.

**{¶34}** The doctrine of res judicata bars the relitigation of issues that were raised on appeal or could have been raised on appeal. *In re M.H.*, 8th Dist. Cuyahoga No. 85308, 2005-Ohio-2854. The doctrine applies to a party's claim, not the lower court's jurisdiction over the subject matter of that claim. *Bell,* 10th Dist. Franklin No. 09AP-438, 2009-Ohio-4851.

**{¶35}** A review of the record reveals that "none of appellant's allegations as argued in the 60(B) motion were new; [he] merely reargue[d] issues settled" in the juvenile court's previous orders. *In re M.H.* at ¶ 9. In addition, this court already determined in appellant's previous appeal that the juvenile court's decision to award legal custody of appellant's children to the mother was supported by competent credible evidence. *Tokar v. Tokar*, 8th Dist. Cuyahoga No. 93506, 2010-Ohio-524, ¶ 7-9.

> The decision of a reviewing court in a case remains the law of that case on legal questions involved for all subsequent proceedings in the case at both the trial and reviewing levels.

*Nolan v. Nolan*, 11 Ohio St.3d 1, 3, 462 N.E.2d 410 (1984).

**{¶36}** Because appellant's claims that the November 28, 2011 awards of legal custody were based on "perjury" and "fraud" on the part of witnesses were barred by the doctrine of res judicata, the juvenile court did not abuse its discretion in denying his Civ.R. 60(B) motion without a hearing. *In re M.H.; compare Scholler v. Scholler*, 10 Ohio St.3d 98, 462 N.E.2d 158 (1984), limiting *Coulson*, 5 Ohio St.3d 12, 13, 448 N.E.2d 809. Appellant may not circumvent the juvenile court's legal custody award by filing successive motions for relief from that award. *Woods*, 8th Dist. Cuyahoga No. 94561, 2010-Ohio-5144.

**{¶37}** Appellant's first assignment of error is overruled.

**{¶38}** Somewhat ironically in light of the foregoing, appellant argues in his second assignment of error that the mother's motions to show cause were "barred by the doctrine of res judicata." He asserts on this basis that the juvenile court should not have even considered those motions. Appellant's assertion lacks merit.

**{¶39}** As explained previously, res judicata does not operate to prevent the trial court from considering the doctrine's applicability to the matter before it. Moreover, at any event, the juvenile court "dismissed" the mother's motions to show cause. The court, therefore, ruled in appellant's favor. Because there is no justiciable controversy for this court to resolve with respect to this issue, appellant's second assignment of error is overruled. *Karnes v. Karnes*, 4th Dist. Athens No. 00CA53, 2001-Ohio-2548.

{¶40} Appellant argues in his third assignment of error that during the hearing on CJFS's motions, the visiting judge abused his discretion by directing that appellant be removed from the courtroom until he agreed to take the stand as a witness. He asserts that the judge's action violated his constitutional right against self-incrimination.

{¶41} The right against self-incrimination gives the defendant in a criminal case the ability to completely refuse to testify at trial. *In re Myers*, 3d Dist. Seneca No. 13-06-48, 2007-Ohio-1631, ¶ 32. This court has acknowledged that the Fifth Amendment right against self-incrimination can be invoked in the context of a juvenile court proceeding. *In re Billman*, 92 Ohio App.3d 279, 280, 634 N.E.2d 1050 (8th Dist.1993), citing *In re Gault*, 387 U.S. 1, 47-48, 87 S.Ct. 1428, 18 L.Ed.2d 527 (1967).

{¶42} A juvenile court proceeding is a civil action however, and in such an action, the right does not relieve a person of the obligations to either appear for a proceeding or respond to certain questions; rather, the right prohibits the state from compelling the witness to testify regarding matters that "may tend to incriminate" the witness in a future criminal proceeding. *In re Myers*, citing *Tedeschi v. Grover*, 39 Ohio App.3d at 111, 529 N.E.2d 480 (10th Dist.1988). Thus, the Fifth Amendment protection did not permit appellant to refuse completely to testify when the visiting judge ordered him to do so. *In re Shrider*, 3d Dist. Wyandot Nos. 16-05-20 and 16-05-21, 2006-Ohio-2792, ¶ 34.

{¶43} Contempt is defined in general terms as disobedience of a court order, i.e., "'conduct which brings the administration of justice into disrespect, or which tends to embarrass, impede or obstruct a court in the performance of its functions.'" *Denovchek*

*v. Trumbull Cty. Bd. of Commrs.*, 36 Ohio St.3d 14, 15, 520 N.E.2d 1362 (1988), quoting *Windham Bank v. Tomaszczyk*, 27 Ohio St.2d 55, 271 N.E.2d 815 (1971), paragraph one of the syllabus. Contempt proceedings are often classified as *sui generis*, neither civil nor criminal. *Id.*

{¶44} Most courts distinguish between civil and criminal contempt proceedings, with the distinction usually based on the purpose to be served by the sanction. *State ex rel. Corn v. Russo*, 90 Ohio St.3d 551, 740 N.E.2d 265 (2001). Thus, in determining whether a contempt is civil or criminal, the pertinent question concerns what the court primarily seeks to accomplish by imposing the sanction. *Id.*, citing *Shillitani v. United States*, 384 U.S. 364, 370, 86 S.Ct. 1531, 16 L.Ed.2d 622 (1966).

{¶45} Civil contempt sanctions are designed for remedial or coercive purposes and are often employed to compel obedience to a court order. *Id.* In this case, the visiting judge clearly sought to compel appellant to obey an order to take the stand for cross-examination. In light of appellant's obstreperous behavior, the visiting judge acted within his prerogative in removing appellant from the courtroom for a time until appellant cooperated with the purpose for which trial had been called. R.C. 2705.02(A).

{¶46} Moreover, a review of the testimony at issue indicates appellant did not answer "a single question or make a statement that would incriminate him in a subsequent criminal proceeding." *In re Myers,* 2007-Ohio-1631 at ¶33. Appellant limited his testimony, and for the most part, the juvenile court permitted his equivocal answers. Under these circumstances, this court cannot find an abuse of discretion.

**{¶47}** Appellant's third assignment of error is overruled.

**{¶48}** In his fourth assignment of error, appellant argues that the amount of child support the juvenile court ordered him to pay lacks evidentiary support. Appellant, however, did not offer any evidence either of his true income or that he was unable to earn at least the minimum wage. *Moore v. Moore*, 175 Ohio App.3d 1, 2008-Ohio-255, 884 N.E.2d 1113 (6th Dist.), ¶ 62-78.

**{¶49}** The trial court also has considerable discretion in determining the amount of child support to be awarded. *See Pauly v. Pauly*, 80 Ohio St.3d 386, 686 N.E.2d 1108 (1997). In this case, the visiting judge completed a child support worksheet, as required by R.C. 3119.022 and *Marker v. Grimm*, 65 Ohio St.3d 139, 601 N.E.2d 496 (1992). The judge awarded child support in accordance with the worksheet, which is "rebuttably presumed to be the correct amount of child support due." R.C. 3110.03. This court cannot find that the juvenile court abused its discretion in following the mandates of R.C. 3119.022. *Moore.*

**{¶50}** Accordingly, appellant's fourth assignment of error also is overruled.

**{¶51}** The juvenile court's orders are affirmed.

It is ordered that appellees recover from appellant costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate be sent to said court to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.


_____
KENNETH A. ROCCO, JUDGE

SEAN C. GALLAGHER, P.J., and
TIM McCORMACK, J., CONCUR