MOORE, Appellee,

v.

MOORE et al., Appellants.

[Cite as *Moore v. Moore*, 175 Ohio App.3d 1, 2008-Ohio-255.]

Court of Appeals of Ohio,
Sixth District, Ottawa County.

Nos. OT–06–005, OT–06–009 and OT–06–013.

Decided Jan. 25, 2008.

4

6

Melvin G. Nusbaum and Frederic E. Matthews, for appellee.

Fritz Byers, Martin E. Mohler, and Martin J. Holmes, Sr., for appellant John Robert Moore IV; Henry B. Herschel and Charles E. Bloom, for appellants John Robert Moore III, Treasure Cove Marina, Inc., Moore Marina, Inc., The Yacht Center, Ltd., Cove West Properties, Great Lakes Marine Transit, Inc. and the Kora B. Johnson Family Special Trust Agreement dated September 1999.

SINGER, Judge.

{¶ 1} This consolidated case involves appeals from a divorce action. First, appellants, John Robert Moore IV, John Robert Moore III, Treasure Cove Marina, Inc., Moore Marina, Inc., The Yacht Center, Ltd., Cove West Properties, Great Lakes Marine Transit, Inc., and the Kora B. Johnson Family Special Trust Agreement dated September 1999, appeal the judgment rendered in the Ottawa County Court of Common Pleas granting a divorce to appellee, Hilary Moore (App. Nos. OT–06–005 and OT–06–009). Second, John Robert Moore IV separately appeals the divorce decree. (App. No. OT–06–013).

{¶ 2} Hilary and John Moore IV ("Moore IV") were married on February 12, 1994, and had three minor children. Appellee, Hilary Moore, filed for divorce from appellant Moore IV in March 2002. On May 1, 2002, the court issued a temporary order directing Moore IV to pay the mortgage of the marital home during the pendency of the divorce. Additionally the order stated: "[The parties] shall each refrain from selling, disposing, encumbering or transferring assets of the parties during the pendency of these proceedings and shall be restrained from incurring additional debt in the name of the other."

{¶ 3} On June 24, 2002, Hilary Moore filed a motion to add Moore IV's father, John Moore III ("Moore III"), as an additional defendant to the action. Hilary Moore alleged that her father-in-law's extensive involvement in Moore IV's business ventures necessitated his joinder to ensure a fair, equitable division of the marital property. A magistrate granted the motion on August 19, 2002. Service to Moore III was perfected in 2003. On November 18, 2004, however, the parties mutually agreed to dismiss Moore III from the action.

{¶ 4} Following three and one-half years of numerous pretrial hearings and filings in this, as the trial court described it, "acrimonious" case, the court on January 4, 2006, issued a 241–page judgment entry (1) granting Hilary Moore a divorce from Moore IV and custody of the children, (2) awarding Hilary Moore an equitable share of the marital estate in the amount of $1,573,105.10, and (3) awarding Hilary Moore $4,500 per month in spousal support for five years, payable as a lump sum, as well as reasonable attorney fees. The court made a specific finding that Moore IV had engaged in financial misconduct. Consequently, the court appointed a receiver and ordered him to establish a trust for the purpose of ensuring an equitable division of the marital property, carrying out the court's judgments, and preventing Moore IV from unjust enrichment. Finally, the court, sua sponte, joined, as necessary parties, all businesses owned in whole or in part by Moore IV or Moore III. The court also joined Moore III as a necessary party.

App. Nos. OT–06–005 and OT–06–009

{¶ 5} Appellants have set forth the following assignments of error:

{¶ 6} "I. It was improper for the trial court to join John Robert Moore III, Treasure Cove Marina, Inc., d.b.a. Moore Marina, Inc., The Yacht Center, Ltd., Cove West Properties, Great Lakes Marine Transit, Inc., and the Kora B. Johnson Family Special Trust Agreement dated September, 1999 after trial.

{¶ 7} "II. It was improper for the trial court as part of a distributive award in this divorce action to grant to appellee, Hilary A. Moore a direct property interest in real and personal property owned by John Robert Moore III, Treasure Cove Marina, Inc., d.b.a. Moore Marina, Inc., The Yacht Center, Ltd.,

Cove West Properties, Great Lakes Marine Transit, Inc., and the Kora B. Johnson Family Special Trust Agreement dated September, 1999.

{¶ 8} "III. It was error for the trial court sitting as a domestic relations court to assert jurisdiction over assets of John Robert Moore III, Treasure Cove Marina, Inc., d.b.a. Moore Marina, Inc., The Yacht Center, Ltd., Cove West Properties, Great Lakes Marine Transit, Inc., and the Kora B. Johnson Family Special Trust Agreement dated September, 1999.

{¶ 9} "IV. It was error for the trial court to appoint a receiver, order the receiver to take control of the assets of John Robert Moore III, Treasure Cove Marina, Inc., d.b.a. Moore Marina, Inc., The Yacht Center, Ltd., Cove West Properties, Great Lakes Marine Transit, Inc., and the Kora B. Johnson Family Special Trust Agreement dated September, 1999 and order the previously named appellant's assets sold in order to satisfy a distributive award granted to appellee and to satisfy a judgment entered against appellant, John Robert Moore IV.

{¶ 10} "V. It was error for the trial court to find that appellant, John Robert Moore, III an individual who was not a party to the action at trial had facilitated financial misconduct with appellant, John Robert Moore, IV and order assets owned by corporations in which he was a stockholder with appellant, John Robert Moore, IV be sold because of such conduct.

{¶ 11} "VI. The trial court improperly found a constructive trust had been created by operation of law, and even if such finding was justified, it was error for the trial court to order the assets of corporations whose shares where the res (sic) of the trust be sold.(sic)"

{¶ 12} "VII. It was error for the trial court to order real property owned by the Kora B. Johnson Trust Agreement date September 1999 a non-party be sold to satisfy a distributive award granted to appellee and to satisfy a judgment entered against appellant, John Robert Moore, IV."

{¶ 13} In their first assignment of error, appellants contend that the trial court erred in joining them as parties after trial. Appellants contend that because they were not made parties to the action until after trial, their rights to procedural due process were violated, as they had no opportunity to present evidence and cross-examine witnesses. Appellee disagrees, noting that appellants were given two opportunities to be heard in this action: first, when Moore III was originally joined in the action until his dismissal, which he requested, in 2004, and second, when the court conducted a hearing after trial to show cause why an order continuing the appointment of a receiver for Moore IV's property should not be rendered. Moore III, as a party, testified at that hearing. Additionally, appellant points out that Moore III testified as a witness regarding

his business dealings with his son at the divorce hearing after he had been dismissed as a party.

{¶ 14} In joining appellants, the trial court cited Civ.R. 75(B). Joinder pursuant to Civ.R. 75(B) is within the sound discretion of the trial court. *Huener v. Huener* (1996), 110 Ohio App.3d 322, 327, 674 N.E.2d 389. An abuse of discretion connotes more than an error of law or judgment and implies that the trial court's attitude is unreasonable, arbitrary, or unconscionable. *Blakemore v. Blakemore* (1983), 5 Ohio St.3d 217, 219, 5 OBR 481, 450 N.E.2d 1140.

{¶ 15} Civ.R. 75(B) states that Civ.R. 19, which sets forth the joinder of parties "needed for just adjudication," has no application in divorce actions. Civ.R. 75(B)(1) provides:

{¶ 16} "A person or corporation having possession of, control of, or claiming an interest in property, whether real, personal, or mixed, out of which a party seeks a division of marital property, a distributive award, or an award of spousal support or other support, may be made a party defendant."

{¶ 17} The crucial issue is whether appellants claimed "an interest in property." The term "interest," as found in Civ.R. 75(B)(1) means "lien or ownership, legal or equitable." *Shannon v. Shannon* (Feb. 4, 1993), 8th Dist. No. 61747, 1993 WL 27633, citing *Maher v. Maher* (1978), 64 Ohio App.2d 22, 24, 18 O.O.3d 14, 410 N.E.2d 1260.

{¶ 18} In this particular assignment of error, appellants do not dispute the issue of interest in the properties at issue. Rather, appellants, citing *Foster v. Foster* (Jan. 11, 1989), 9th Dist. No. 1735, 1989 WL 1632, object to the timing of the joinder and its due process implications. In *Foster*, a wife filed a divorce action against her husband. Before final judgment, the wife fired her attorney and obtained new counsel. After final judgment but during the pendency of an appeal, the discharged attorney sought to intervene in the action, pursuant to Civ.R. 24, to recover unpaid legal fees. Following the appellate court's decision affirming the trial court, the trial court denied the discharged attorney's motion to intervene. The Ninth District Court of Appeals found no abuse of discretion, noting that Civ.R. 24 is inapplicable in divorce actions and that contracts between attorneys and clients are to be litigated in actions separate from the divorce action. Appellants in this case emphasize the importance of the court's statement that "intervention is seldom allowed where a judgment has already been rendered especially where a party has an alternate means to protect his interests."

{¶ 19} *Foster* is distinguishable from this case. First, *Foster* concerned a Civil Rule not applicable in divorce cases, as opposed to Civ.R. 75(B), which applies exclusively to domestic-relations matters. Second, the party seeking to intervene in *Foster* made his request after the trial court had issued its final, appealable

order, as opposed to the court in this case, which joined appellants in its final, appealable order. Third, the *Foster* court's conclusion was based more on the fact that the discharged attorney had alternate means to protect his interests than the timing of his motion to intervene.

{¶ 20} To satisfy due process, a defendant must have notice of the hearing and have an opportunity to be heard. *Goldberg v. Kelly* (1970), 397 U.S. 254, 90 S.Ct. 1011, 25 L.Ed.2d 287; *Mathews v. Eldridge* (1976), 424 U.S. 319, 96 S.Ct. 893, 47 L.Ed.2d 18. Generally, any "notice reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action" is sufficient. *Mullane v. Cent. Hanover Bank & Trust Co.* (1950), 339 U.S. 306, 314, 70 S.Ct. 652, 94 L.Ed. 865.

{¶ 21} As discussed above, Moore III was a part of this action for approximately two years, until he was dismissed at his own request. Moore III appeared and testified at the trial. He also appeared and testified at the show-cause hearing, where he was represented by counsel. Clearly, he was no stranger to this action. For due process purposes, appellants, including Moore III, were given a fair opportunity to fully litigate and to be "heard." Therefore, we do not find the court's joinder or the timing of the joinder to be detrimental to Moore III's due process rights. Finding no abuse of discretion, appellants' first assignment of error is not well taken.

{¶ 22} In their second assignment of error, appellants contend that the court erred in disregarding appellants' corporate form and awarding appellee a direct interest in the appellants' corporate property. Appellants argue that because the trial court found that Moore IV had engaged in financial misconduct, the only two appropriate remedies were either to award appellee additional marital property or to make a distributive award. In support, appellants cite R.C. 3105.171(E), which states:

{¶ 23} "(1) The court may make a distributive award to facilitate, effectuate, or supplement a division of marital property. The court may require any distributive award to be secured by a lien on the payor's specific marital property or separate property.

{¶ 24} " * * *

{¶ 25} "(3) If a spouse has engaged in financial misconduct, including, but not limited to, the dissipation, destruction, concealment, or fraudulent disposition of assets, the court may compensate the offended spouse with a distributive award or with a greater award of marital property."

{¶ 26} The above statute, through the use of the word "may," merely offers courts two alternatives for dealing with spouses who have engaged in misconduct.

The statute does not mandate that the above alternatives are the only ones available to courts when there has been a fraudulent disposition of assets.

{¶ 27} " 'That a corporation is a legal entity, apart from the natural persons who compose it, is a mere fiction, introduced for convenience in the transaction of its business, and of those who do business with it; but like every other fiction of the law, when urged to an intent and purpose not within its reason and policy, may be disregarded.' " *Belvedere Condominium Unit Owners' Assn. v. R.E. Roark Cos., Inc.* (1993), 67 Ohio St.3d 274, 287, 617 N.E.2d 1075, quoting *State ex rel. Atty. Gen. v. Std. Oil Co.* (1892), 49 Ohio St. 137, 30 N.E. 279, paragraph one of the syllabus. *Belvedere* set forth a three-part test for piercing the corporate veil.

{¶ 28} "[T]he corporate form may be disregarded and individual share-holders held liable for corporate misdeeds when (1) control over the corporation by those to be held liable was so complete that the corporation has no separate mind, will, or existence of its own, (2) control over the corporation by those to be held liable was exercised in such a manner as to commit fraud or an illegal act against the person seeking to disregard the corporate entity, and (3) injury or unjust loss resulted to the plaintiff from such control and wrong." Id.

{¶ 29} Courts have long recognized " 'the broader equitable principle that the doctrine of corporate entity, recognized generally and for most purposes, will not be regarded when to do so would work fraud or injustice.' " *Cleveland Indus. Square, Inc. v. Dzina,* 8th Dist. Nos. 85336, 85423, 85337, 85441, and 85422, 2006-Ohio-1095, 2006 WL 562146, quoting *First Natl. City Bank v. Banco Para El Comercio Exterior De Cuba* (1983), 462 U.S. 611, 629, 103 S.Ct. 2591, 77 L.Ed.2d 46, quoting *Taylor v. Std. Gas Co.* (1939), 306 U.S. 307, 322, 59 S.Ct. 543, 83 L.Ed. 669.

{¶ 30} In this case, the court did not disregard appellants' corporate form. The court appointed a receiver to achieve an equitable division of the marital property. The court's intent to recognize the corporate form can be deemed from the judgment entry wherein the court states, with regard to appellant Treasure Cove Marina, "Ohio statutes applicable to corporations will govern the actions of the receiver in enforcing judgment against [Moore IV's] ownership interest * * *." Appellants' second assignment of error is not well taken.

{¶ 31} In their third assignment of error, appellants contend that the trial court lacked subject-matter jurisdiction over appellants' corporate assets. This assignment of error presumes that the court in this case disregarded appellants' corporate form. Having already determined that the court did not disregard corporate form, we hold that the trial court properly exercised jurisdiction over

Moore IV's interest in his business entities pursuant to R.C. 3105.171(B). Appellants' third assignment of error is not well taken.

{¶ 32} In their fourth assignment of error, appellants contend that the court erred in appointing a receiver.

{¶ 33} It has long been recognized that the trial court is vested with sound discretion to appoint a receiver. *State ex rel. Celebrezze v. Gibbs* (1991), 60 Ohio St.3d 69, 73, 573 N.E.2d 62. The Ohio Supreme Court has recently stated:

{¶ 34} "A court in exercising its discretion to appoint or refuse to appoint a receiver must take into account all the circumstances and facts of the case, the presence of conditions and grounds justifying the relief, the ends of justice, the rights of all the parties interested in the controversy and subject matter, and the adequacy and effectiveness of other remedies." Id. at 73, 573 N.E.2d 62.

{¶ 35} Given the contentious nature of this case, appellants' vast and complicated holdings, and evidence that Moore IV had engaged in financial misconduct with regard to the marital estate, we conclude that the appointment of a receiver was warranted to protect appellee's interest. Finding no abuse of discretion, appellants' fourth assignment of error is not well taken.

{¶ 36} In their fifth assignment of error, appellants contend that the trial court erred in finding that Moore III had facilitated financial misconduct with his son, Moore IV. Appellants contend that R.C. 3105.17.1 does not permit a domestic-relations court to find that a nonspouse party engaged in financial misconduct for purposes of fashioning a remedy. Appellants' argument is without merit. The fact that Moore IV may have had some assistance in his deception does not change the fact that for purposes of R.C. 3105.17.1, the court found that Moore IV had engaged in financial misconduct and because of that, it was necessary to compensate appellee through an unequal distribution of the marital property. Appellants' fifth assignment of error is not well taken.

{¶ 37} In their sixth assignment of error, appellants contend that the court erred in finding that a constructive trust had been created by operation of law.

{¶ 38} "A constructive trust is a ' "trust by operation of law which arises contrary to intention and in invitum, against one who, by fraud, actual or constructive, by duress or abuse of confidence, by commission of wrong, or by any form of unconscionable conduct, artifice, concealment, or questionable means, or who in any way against equity and good conscience, either has obtained or holds the legal right to property which he ought not, in equity and good conscience, hold and enjoy. It is raised by equity to satisfy the demands of justice." ' " *Estate of Cowling v. Estate of Cowling*, 109 Ohio St.3d 276, 2006-Ohio-2418, 847

N.E.2d 405, ¶ 18, quoting *Ferguson v. Owens* (1984), 9 Ohio St.3d 223, 225, 9 OBR 565, 459 N.E.2d 1293, quoting 76 American Jurisprudence 2d (1975) 446, Trusts, Section 221. This court reviews a trial court's determination regarding the existence of a constructive trust on a manifest-weight-of-the-evidence standard. *Bergholtz Coal Holding Co. v. Dunning*, 11th Dist. No. 2004–L–209, 2006-Ohio-3401, 2006 WL 1816290, ¶ 26. "Judgments supported by some competent, credible evidence going to all the essential elements of the case will not be reversed by a reviewing court as being against the manifest weight of the evidence." *C.E. Morris Co. v. Foley Constr. Co.* (1978), 54 Ohio St.2d 279, 8 O.O.3d 261, 376 N.E.2d 578, syllabus.

{¶ 39} The trial court in this case found that a constructive trust arose by operation of law to prevent Moore IV from unjust enrichment as a result of his financial misconduct. Financial misconduct arises when one spouse engages in some type of knowing wrongdoing, and it involves some form of profit or interference with another's property rights. *Mantle v. Sterry*, 10th Dist. No. 02AP–286, 2003-Ohio-6058, 2003 WL 22681343, ¶ 31. R.C. 3105.171(E)(3) does not set forth an exclusive listing of acts constituting financial misconduct. Those acts that are listed (dissipation, destruction, concealment, or fraudulent disposition) all contain some element requiring wrongful scienter. Typically, the offending spouse will either profit from the misconduct or intentionally defeat the other spouse's distribution of marital assets. *Hammond v. Brown* (Sept. 14, 1995), 8th Dist. No. 67268, 1995 WL 546903. Because financial misconduct involves some element of profit or interference with another's property rights, the time frame in which the alleged misconduct occurs may often demonstrate wrongful scienter. Id. For example, diminution of the marital estate during the pendency of a divorce action might create an inference of misconduct. See, e.g., *Spychalski v. Spychalski* (1992), 80 Ohio App.3d 10, 608 N.E.2d 802.

{¶ 40} The record shows that prior to the filing of the divorce complaint, the parties maintained a USB/Paine Webber account valued at $409,923.65. After filing her complaint, appellee noticed that the account had substantially dissipated. Moore IV claimed that he used $240,000 of the account to pay the couple's $10,000 monthly mortgage from April 2002 to April 2004. He also claimed that the account was further reduced by $99,807 as a result of interest on a credit line and market fluctuation. The court found that Moore IV had intentionally engaged in financial misconduct with regard to this account, as he was under court order to pay the mortgage from his income and not from the account. Moreover, Moore IV provided no evidence that the account lost $99,807 due to interest or market fluctuation.

{¶ 41} The record shows that in 2000, Moore IV made a $381,000 loan to one of his companies, Pure Force Powerwashing. According to Moore IV's accountant,

the $381,000 was returned to Moore IV in 2001. Moore IV's accountant testified that Moore IV probably put the money in his personal account. Moore IV was unable to trace this money to any account or business entity. Thus, the court found it reasonable to presume that Moore IV intentionally concealed the $381,000 during the marriage.

{¶ 42} Next, the record shows that Moore IV attempted to conceal his two-thirds interest in Cove West Properties, which amounted to $350,532. Moore IV alleged that he retained only a one-third interest of the capital account, which amounted to $175,266. According to Moore IV, Moore III owned a third and Moore IV's aunt owned the other third. Moore IV's schedule K–1 for 2001 showed that he owned a two-thirds capital interest in Cove West Properties. It was only after the divorce complaint was filed that Moore IV transferred one-third of his interest to his aunt. Absent any other explanation, the court found it reasonable to presume wrongful scienter.

{¶ 43} Appellee also alleged that Moore IV concealed proceeds from the lease of a two-acre parcel jointly owned by appellee and Moore IV. The record showed that in 1998, 1999, and 2000, the parties received $85,000 per year in rental income from the parcel. Suddenly, in 2001, after the complaint for divorce was filed, the parties received only $39,450 in rental income from the parcel. Moore IV's accountant blamed the rent reduction on "poor economic conditions." The court did not find this explanation credible and instead found that the evidence created a presumption of misconduct on the part of Moore IV.

{¶ 44} The record showed that Moore IV sold Great Lakes Transit, Inc. for $300,000 after the divorce complaint was filed. Moore IV claimed that he sold the company to a former employee pursuant to a lease-purchase agreement because it was on the verge of bankruptcy. The court found this sale suspect because of the amount of the sale and because the purchaser himself filed for bankruptcy before entering into the agreement.

{¶ 45} The record shows that during the pendency of the divorce, Moore IV, unknown to appellee, took out a $5,000,000 loan from the Huntington National Bank, pledging assets of the marriage as collateral for the indebtedness. This action was in direct violation of the court's May 1, 2002 court order.

{¶ 46} Finally, Moore IV admitted that he depleted a New England Financial Life Insurance policy to keep his business going. Despite his reasoning, this action too was in direct violation of the court's May 1, 2002 court order.

{¶ 47} Based on the forgoing, we conclude that there was competent, credible evidence to support the trial court's determination that a constructive trust arose by operation of law to prevent Moore IV's unjust enrichment. Appellants' sixth assignment of error is not well taken.

{¶ 48} In their seventh assignment of error, appellants contend that the court lacked jurisdiction to order property, owned by the Kora B. Johnson Trust Agreement, sold to satisfy a distributive award granted to appellee and to satisfy a judgment entered against Moore IV. Appellants contend that there is no evidence that the property, located at 904 S.E. Catawba Road in Port Clinton Ohio, is marital property.

{¶ 49} When dividing marital property, a court must "determine what constitutes marital property and what constitutes separate property. In either case, upon making such a determination, the court shall divide the marital and separate property equitably between the spouses." R.C. 3105.171(B). Pursuant to R.C. 3105.171(G), a trial court must indicate the basis for its division of the marital property in sufficient detail to enable a reviewing court to determine whether the award is fair, equitable, and in accordance with the law. *Kaechele v. Kaechele* (1988), 35 Ohio St.3d 93, 97, 518 N.E.2d 1197. As a part of these findings, the trial court must assign a value to all of the marital property. *Spychalski*, 80 Ohio App.3d 10, 608 N.E.2d 802; *Hruby v. Hruby* (June 11, 1997), 7th Dist. No. 93–C–9, 1997 WL 321608; R.C. 3105.171(B). A trial court is required only to indicate the basis for its decision and does not have to explain its reasoning in detail. *Davis v. Davis* (Dec. 26, 2001), 7th Dist. No. 2000 CO 31, 2001 WL 1667852.

{¶ 50} We review factual determinations of the value of marital property to see whether they are against the manifest weight of the evidence. *Fenstermaker v. Fenstermaker*, 11th Dist. No. 2004–T–0097, 2005-Ohio-5604, 2005 WL 2709571, ¶ 13–14. The trial court's judgment will not be reversed as being against the manifest weight of the evidence if the court's judgment is supported by some competent, credible evidence. *C.E. Morris Co.*, 54 Ohio St.2d 279, 8 O.O.3d 261, 376 N.E.2d 578.

{¶ 51} This assignment of error concerns property located at 904 S.E. Catawba Road, Port Clinton, Ohio. At trial, there was testimony that this particular real estate was owned by the Kora B. Johnson Trust and that Moore IV had no interest in the real estate, though appellants conceded that they had interests in the business entities located on the property as well as ownership interest in the entities and property around 904 Catawba. No evidence was presented showing that appellants owned the real estate, and it appears that the trial court failed to consider the ownership interest of the trust before turning 904 S.E. Catawba over to the receiver. Finding no competent, credible evidence to support the trial court's conclusion that the real estate located at 904 S.E. Catawba was marital property, appellants' seventh assignment of error is well taken. On remand, the trial court is instructed to reassess its distribution of marital property in light of our ruling on this assignment of error.

{¶ 52} Moore IV asserts the following assignments of error:

{¶ 53} "I. The trial court committed prejudicial error by concluding, contrary to settled law and all competent evidence, that the husband's separate property was marital property, subject to distribution between the parties, and then awarding wife an interest in that property.

{¶ 54} "II. The trial court committed prejudicial error by employing income averaging to impute income to husband, based on a finding that he was voluntarily underemployed.

{¶ 55} "III. The trial court committed prejudicial error by ordering that husband pay wife's attorney fees and litigation expenses in the amount of $190,000.

{¶ 56} "IV. The trial court committed prejudicial error by ordering husband to purchase an annuity in lieu of periodic payments for child support. ·

{¶ 57} "V. The trial court's judgment are [sic] infected with errors that are both independently reversible and fundamentally interrelated, so as to require reversal of the judgments in their entirety and in each of their particulars and remand with instructions to undertake the proceedings ab initio."

{¶ 58} In his first assignment of error, Moore IV contends that the court erred in finding that his interest in Treasure Cove Marina, Inc. constituted marital property.

{¶ 59} R.C. 3105.171(A)(3)(a)(i) defines "marital property" as "[a]ll real and personal property that currently is owned by either or both of the spouses, including, but not limited to, the retirement benefits of the spouses, and that was acquired by either or both of the spouses during the marriage."

{¶ 60} "Separate property" is defined in R.C. 3105.171(A)(6)(a)(ii) as "[a]ny real or personal property or interest in real or personal property that was acquired by one spouse prior to the date of the marriage." A trial court assumes that any property acquired during marriage is marital, unless evidence is offered to rebut that presumption. *Barkley v. Barkley* (1997), 119 Ohio App.3d 155, 694 N.E.2d 989. However, marital property does not include any separate property, which includes "[a]ny gift of * * * personal property * * * that is made after the date of the marriage and that is proven by clear and convincing evidence to have been given to only one spouse." R.C. 3105.171(A)(6)(a)(vii).

{¶ 61} The record shows that in 1995, Moore IV acquired 198 shares of stock in Treasure Cove. Moore IV contends that these shares were a gift from his father meant only for his benefit. In support, Moore IV offered his father's testimony regarding his intent, and he submitted his father's gift tax return. Moore IV also

pointed to the fact that the shares were titled in his name only. The evidence, however, showed that there was some intent for appellee to benefit from and contribute to the transaction based on the fact that the purchase of the shares was personally guaranteed by Moore IV and appellee and the fact that the purchase was partially guaranteed by the parties' marital home. Moore IV and appellee were the sole guarantors of the purchase. Furthermore, Moore IV was named president of Treasure Cove, and appellee was hired as an employee. We hold the above to be clear and convincing evidence that the gift of Treasure Cove stock is not separate property for purposes of this case. Moore IV's first assignment of error is not well taken.

{¶ 62} In his second assignment of error, Moore IV contends that the court erred in employing income averaging to impute income based on a finding that he was voluntarily unemployed.

{¶ 63} Before a trial court may impute income to a parent, it must first find that the parent is voluntarily unemployed or underemployed. *Inscoe v. Inscoe* (1997), 121 Ohio App.3d 396, 424, 700 N.E.2d 70, citing *Rock v. Cabral* (1993), 67 Ohio St.3d 108, 616 N.E.2d 218, syllabus. Whether a parent is voluntarily unemployed or underemployed is a determination within the trial court's discretion and will be upheld absent an abuse of discretion. *Rock* at 112, 616 N.E.2d 218, applying former R.C. 3113.215. An abuse of discretion is more than an error of law or judgment; it implies that the court's attitude is unreasonable, arbitrary, or unconscionable. *Blakemore v. Blakemore* (1983), 5 Ohio St.3d 217, 219, 5 OBR 481, 450 N.E.2d 1140.

{¶ 64} R.C. 3119.01(C)(11) provides the following guidelines for determining imputed income:

{¶ 65} "(a) Imputed income that the court or agency determines the parent would have earned if fully employed as determined from the following criteria:

{¶ 66} "(i) The parent's prior employment experience;

{¶ 67} "(ii) The parent's education;

{¶ 68} "(iii) The parent's physical and mental disabilities, if any;

{¶ 69} "(iv) The availability of employment in the geographic area in which the parent resides;

{¶ 70} "(v) The prevailing wage and salary levels in the geographic area in which the parent resides;

{¶ 71} "(vi) The parent's special skills and training;

{¶ 72} "(vii) Whether there is evidence that the parent has the ability to earn the imputed income;

{¶ 73} "(viii) The age and special needs of the child for whom child support is being calculated under this section;

{¶ 74} "(ix) The parent's increased earning capacity because of experience;

{¶ 75} "(x) Any other relevant factor."

{¶ 76} Applying the above, the trial court found Moore IV, a high school graduate with a history of success in business, to be underemployed based on the following evidence before the court. During the first four years of the parties' marriage, Moore IV earned in excess of $150,000 a year, and the parties engaged in a lavish lifestyle. Yet after the filing of the divorce complaint, Moore IV alleged that his income dropped to $22,783 a year. Towards the end of the divorce proceedings, Moore IV claimed he was receiving no income. Moore IV blamed his drop in income on a bad economy and unsuccessful attempts to start new businesses. The court found Moore IV's protestations of poverty to be implausible based on the fact that Moore IV was still president of an existing company, Moore Marine, and based on the fact that Moore IV has maintained his prior standard of living. Further, the court found Moore IV's credibility to be questionable, given that the court had already determined that he engaged in financial misconduct. We recognize that the trier of fact, as opposed to this court, is in a far better position to weigh the credibility of witnesses. Based on the foregoing, we conclude that the trial court did not abuse its discretion in finding Moore IV to be underemployed.

 {¶ 77} When imputing income, the trial court determines potential income—i.e., what the parent would have earned if fully employed. Former R.C. 3113.215(A)(5)(a). The trial court must consider the parent's "employment potential and probable earnings based on the parent's recent work history, the parent's occupational qualifications, and the prevailing job opportunities and salary levels in the community in which the parent resides." Id. The amount of potential income to be imputed to a parent is also a determination within the trial court's discretion. *Rock*, 67 Ohio St.3d 108, 616 N.E.2d 218.

 {¶ 78} Whether to calculate gross income by averaging income over a reasonable period of years is also within the discretion of the trial court and will not be reversed absent an abuse of that discretion. *Scott G.F. v. Nancy W.S.*, 6th Dist. No. H–04–015, 2005-Ohio-2750, 2005 WL 1314432; *McGuire v. McGuire* (Mar. 8, 2002), 4th Dist. No. 01CA2789, 2002 WL 398725; *Ferrero v. Ferrero* (June 8, 1999), 5th Dist. No. 98–CA–00095, 1999 WL 744431; *Luke v. Luke* (Feb. 20, 1998), 11th Dist. No. 97–L–044, 1998 WL 172813. When applying the abuse-of-discretion standard, appellate courts must not substitute their judgment for that of the trial court. *In re Jane Doe 1* (1991), 57 Ohio St.3d 135, 137–138, 566 N.E.2d 1181.

{¶ 79} In this case, the trial court imputed income to Moore IV in the amount of $277,928.33, his average income for 1994 through 1999. Moore IV contends that this was unreasonable because those years were unusually prosperous for him. Because the court had already determined that Moore IV's explanation for his sudden drop in income was implausible and not supported by the evidence, we find that the years chosen were reasonable for the calculation, and the trial court did not abuse its discretion in employing income averaging. Moore's second assignment of error is not well taken.

{¶ 80} In his third assignment of error, Moore IV contends that the trial court erred in ordering him to pay appellee's attorney fees and litigation expenses in the amount of $190,000. Moore IV contends that the amount was not based on a meaningful evaluation of the time spent on the case. He further objects to the award of attorney fees based on what he contends is his fictitious misconduct.

{¶ 81} The decision of whether to award attorney fees rests in the sound discretion of the court and will not be overturned on appeal absent an abuse of that discretion. *Layne v. Layne* (1992), 83 Ohio App.3d 559, 568, 615 N.E.2d 332; *Birath v. Birath* (1988), 53 Ohio App.3d 31, 39, 558 N.E.2d 63. Prior to April 2005, attorney fees were awarded in domestic-relations cases pursuant to R.C. 3105.18, which included the award of attorney fees as spousal support. In determining whether to award reasonable attorney fees to either party, the trial court was required to decide "whether either party will be prevented from fully litigating that party's rights and adequately protecting that party's interests if it does not award reasonable attorney's fees." R.C. 3105.18(H). Fees could be awarded only if the payor spouse had the ability to pay. Id. See also *Leff v. Leff* (Mar. 2, 2000), 8th Dist. Nos. 75551, 75581, 2000 WL 235766.

{¶ 82} In April 2005, however, R.C. 3105.73 went into effect, substantively changing the applicable standard for attorney fee awards in divorce proceedings. The current statutory section now provides that a court "may award all or part of reasonable attorney's fees and litigation expenses to either party if the court finds the award equitable. In determining whether an award is equitable, the court may consider the parties' marital assets and income, any award of temporary spousal support, the conduct of the parties, and any other relevant factors the court deems appropriate." According to the uncodified law, this section is intended to apply to "any action for divorce, legal separation, or annulment of marriage or any post-decree action or proceeding arising from a divorce, legal separation, annulment, or dissolution of marriage if any of the following apply:

{¶ 83} " * * *

{¶ 84} "(B) The action or proceeding is brought, or a notice of appeal in the action or proceeding is filed, prior to the effective date of this act, and the action or proceeding is pending in a trial or appellate court on the effective date of this act."

{¶ 85} In this case, the court found that Moore IV had the ability to pay appellee's attorney fees based on his already determined imputed income of $277,928.33 per year. The court found the amount to be equitable, given Moore IV's financial misconduct. The court noted that while appellee was awarded some property and investments that allowed her to pay some of her fees, she incurred a large number of additional fees due to Moore IV's deliberate conduct, which unnecessarily prolonged this case. The court cited the following examples of Moore IV's unreasonable conduct:

{¶ 86} "(1) [Moore IV] continued to prosecute his claim for custody despite having conceded during pretrial conferences that custody of the minor children should remain with [appellee];

{¶ 87} "(2) [Moore IV] failed to comply with the terms of visitation and repeatedly sought modifications of the visitation schedule, for which [appellee] had to pay attorney fees;

{¶ 88} "(3) [Moore IV] hindered the sale of the marital estate and other marital assets;

{¶ 89} "(4) Moore IV failed to pay child support, spousal support, and other court ordered obligations, for which [appellee] had to pay attorney fees; and

{¶ 90} "(5) [appellee] had to liquidate a substantial portion of her assets in order to continue litigating * * *."

{¶ 91} At a hearing, the court heard the testimony of appellee's attorneys and reviewed their billing statements. The court found that based on the reasonable hourly rate charged, a rate Moore IV did not object to, appellee had incurred $164,757.14 in attorney fees. The court applied a downward mediation based on the fact that the attorneys had failed to document the amount of time spent on each task performed. The court cited *Swanson v. Swanson* (1976), 48 Ohio App.2d 85, 2 O.O.3d 65, 355 N.E.2d 894, wherein the Eighth District Court of Appeals commented, with regard to attorney fees that "[t]he value of services may be greater or less than that which would be reflected by a simple multiplication of an hourly rate by time expended. We think that in divorce cases, as in probate cases, '(t)o employ the time clock method alone as the test for legal services * * * would certainly be improper and result in completely inadequate fees in large estates and disproportionately high fees in modest ones.'" Id., citing *In re Augar* (1963), 39 Misc.2d 936, 242 N.Y.S.2d 84.

{¶ 92} Next, the court found that appellee was entitled to $ 48,462.44 in law-related expenses. Specifically, the court found that the size and potential value of the marital estate, coupled with Moore IV's misconduct, required appellee to employ the services of the following experts to ensure that she was not prevented from fully litigating her rights.

| Gregory Hendel | business valuation | $ 8,462.44 |
| The William Fall Group | real estate appraisals | $30,000.00 |
| Bill Wayne | property appraisals | $ 6,500.00 |
| Dr. Wayne Graves | Psychologist | $ 2,000.00 |
| Linda Sorah | Guardian Ad Litem | $ 1,500.00 |
| | | $48,462.44 |

{¶ 93} Based on the foregoing evidence supported by the record, we conclude that the trial court did not abuse its discretion in awarding appellee $190,000 in attorney fees and litigation expenses. Moore IV's third assignment of error is not well taken.

{¶ 94} In his fourth assignment of error, Moore IV contends that the court erred in ordering him to purchase an annuity in lieu of periodic child-support payments. In the judgment entry, the court explained that the purchase of an annuity was in the best interest of the children, given Moore IV's financial misconduct and the court's lack of confidence in Moore IV's willingness to pay child support. The court cited R.C. 3111.13(D) as authority, which states:

{¶ 95} "Support judgments or orders ordinarily shall be for periodic payments that may vary in amount. In the best interest of the child, the purchase of an annuity may be ordered in lieu of periodic payments of support if the purchase agreement provides that any remaining principal will be transferred to the ownership and control of the child on the child's attainment of the age of majority."

{¶ 96} Moore IV correctly asserts that R.C. 3111.13(D) specifically pertains to parentage actions and as such, the court erred in applying the statute to this matter. However, we find this error to be harmless. Nothing in R.C. 3119, the Ohio Revised Code section governing child-support matters in a divorce action, prohibits the court from ordering a party to purchase an annuity in lieu of periodic child-support payments. In fact, the court is authorized to "order the support obligation to be paid in periodic increments as it determines to be in the best interest of the children." R.C. 3119.02. A trial court has broad discretion in deciding child-support matters. See Booth v. Booth (1989), 44 Ohio St.3d 142, 144, 541 N.E.2d 1028. We conclude that the trial court was within its discretion

in determining that the purchase of an annuity for purposes of Moore IV's child-support obligation is in the best interest of the children. Moore IV's fourth assignment of error is not well taken.

{¶ 97} In his fifth assignment of error, Moore IV delineates several examples of alleged error from the trial court's voluminous judgment entry. Moore IV contends that these errors directly resulted from what he maintains was the court's two more general errors, discussed above, in determining his separate property and imputing income. Having already determined in Moore IV's first two assignments of error that the court did not err in rejecting Moore IV's separate property claims or in imputing income to him, Moore IV's final assignment of error is not well taken.

{¶ 98} The judgment of the Ottawa County Court of Common Pleas, Domestic Relations Division, App. Nos. OT–06–005 and OT–06–009, is affirmed in part and reversed in part. This case is remanded to the trial court for proceedings consistent with this decision.

{¶ 99} The judgment of the Ottawa County Court of Common Pleas, Domestic Relations Division, App No. OT–06–013, is affirmed. Appellants are ordered to pay two-thirds the costs of this consolidated appeal, and appellee is ordered to pay one-third the costs of this consolidated appeal pursuant to App.R. 24. Judgment for the clerk's expense incurred in preparation of the record, fees allowed by law, and the fee for filing the appeal is awarded to Ottawa County.

> Judgment affirmed in part
> and reversed in part.

PIETRYKOWSKI, P.J., and SKOW, J., concur.